Decision of the Immigration Judge
A ███

# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## ELIZABETH, NEW JERSEY

| | |
|---|---|
| File No.: A ███ | |
| In the Matter of ███ | In Removal Proceedings |
| Respondent | |

| CHARGES: | INA § 237(a)(2)(B)(i) | Controlled Substance Offense |
|---|---|---|
| | INA § 237(a)(2)(A)(iii) <br> INA § 101(a)(43)(B) | Aggravated Felony, Illicit trafficking of a controlled substance |

ON BEHALF OF RESPONDENT
Gregory P. Copeland, Esq.
The Legal Aid Society
199 Water Street, 3rd Floor
New York, New York 10038

ON BEHALF OF ICE/DHS
Christopher Brundage, Esq.
Deputy Chief Counsel
Department of Homeland Security
625 Evans Street, Room 135
Elizabeth, New Jersey 07201

## DECISION AND ORDER OF THE IMMIGRATION JUDGE

### I. Facts and Procedural History

███ ("Respondent") is a native and citizen of the Dominican Republic. On January 6, 2017, the Department of Homeland Security ("DHS") issued Respondent a Notice to Appear ("NTA"), alleging:

1) Respondent is not a citizen or national of the United States;
2) Respondent is a native and citizen of the Dominican Republic;
3) Respondent was admitted to the United States at New York, New York on or about November 12, 1973, as a Lawful Permanent Resident; SA1;
4) Respondent was, on May 15, 2003, convicted in the United States District Court, Southern District of New York, for the offense of Conspiracy to Distribute and Possess with Intent to Distribute Narcotics, to wit: Cocaine, in violation of 21 U.S.C. 846.

Exhibit ("Exh") 1. The NTA further charged Respondent as removable pursuant to the Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii) for being convicted of an aggravated

1

felony and INA § 237(a)(2)(B)(i) for being convicted of a crime relating to a controlled substance. Exh. 1.

On April 5, 2017 Respondent appeared with counsel for a master calendar hearing before Immigration Judge ("IJ") Mirlande Tadal in Elizabeth, New Jersey. Respondent's counsel requested an adjournment for attorney preparation and the court granted the request. On May 17, 2017, Respondent, through counsel, admitted factual allegations two and three and denied factual allegations one and four. Respondent denied both charges of removability. The court sustained all four allegations and both charges of removability. Respondent, through counsel, filed a Form I-589, Application for Asylum, Withholding of Removal, and Relief under the Convention Against Torture and submitted supporting evidence of the same. Exhs. 3, 4. The mater was reset for an individual merits hearing.

On July 13, 2017, Respondent filed a Motion to Terminate Proceedings on the basis that he acquired United States citizenship at birth though his father who was a United States citizen. *See* Resp't Motion, July 13, 2017. On July 21, 2017, the DHS filed an opposition to Respondent's Motion to Terminate. *See* DHS Opposition, July 21, 2017. On August 1, 2017, Respondent submitted a Reply to the DHS's Opposition. *See* Resp't Reply, Aug. 1, 2017. The matter is now before this court.

## II. Legal Standard and Analysis

### a. Burden of Proof

Once an NTA has been properly filed with the Immigration Court, proceedings may be terminated only in specific circumstances. Proceedings may be terminated if deportability or inadmissibility has not been established. *See* INA §§ 240(c)(2), (3); *see also Matter of Rodriguez-Ruiz*, 22 I&N Dec. 1378 (BIA 2000). Proceedings may also be terminated if the respondent is a citizen or national of the United States. *See Matter of Cruz*, 15 I&N Dec. 236 (BIA 1974).

The burden to establish alienage is upon the Government. 8 C.F.R. § 341.2(c); *Matter of Tijerina-Villarreal*, 13 I&N Dec. 332, 336 (BIA 1956). When there is a claim of citizenship, however, one born abroad is presumed to be an alien and must go forward with the evidence to establish his claim to United States citizenship. *Matter of A-M--*, 7 I&N Dec. 332, 336 (BIA 1956). One must prove citizenship by a preponderance of the evidence. *Id.*; *Matter of Baires-Larios*, 24 I&N Dec. 467, 468 (BIA 2008). If citizenship of the United States is proven by a preponderance of the evidence, proceedings shall be terminated. 8 C.F.R. § 1239.2(f).

The issue here is whether Respondent has presented a preponderance of credible evidence sufficient to overcome the presumption of alienage which attaches by reason of his birth in the Dominican Republic. Exh. 1.

### b. Acquisition of Respondent's United States Citizenship

A child born outside of the United States, where one or both parents are United States citizens, may acquire United States citizenship at birth. INA § 301(c)-(e), (g)-(h). The applicable

2

Decision of the Immigration Judge
A▮▮▮▮▮▮▮▮▮

law for transmitting citizenship to a child born abroad when one parent is United States citizen is the statute that was in effect at the time of the child's birth. *Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153, 163 (BIA 2001). Respondent was born in the Dominican Republic on December 20, 1964 to unmarried parents. *See* Resp't Motion, p. 3, July 13, 2017. Accordingly, former INA § 301(a)(7), 8 U.S.C. § 1401(a)(7) (1964), controls his claim to citizenship.[1]

Former INA § 301(a)(7) provides, in pertinent part, that the following shall be nationals and citizens of the United States at birth:

> [A] person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years . . . .

Because Respondent was born out of wedlock, INA § 301(a)(7) is applicable to his case only upon fulfillment of the conditions specified in former INA § 309(a), 8 U.S.C. § 1409(a) (1964). Under former INA § 309(a), the child's paternity must have been established by legitimation before the child's 21st birthday. In sum, when adjudicating cases under the former INA § 309(a) and INA § 301(a)(7), adjudicators must adhere to the following when determining whether a child acquires citizenship at birth out of wedlock to an American father:

(1) Blood Relationship: The adjudicator must be satisfied that a blood relationship exists between the child and the United States citizen father. Absent such a relationship, the child of an alien mother cannot acquire United States nationality at birth.
(2) Legitimation by Father: The child must have legitimated before age 21 under the law of the father's or child's domicile or residence
(3) Father's Physical Presence in the United States: An applicant acquiring citizenship under the former INA § 309(a) must show that his or her father was physically present in the United States for ten years, at least five of which were after the age of fourteen, prior to the birth of the applicant.

Therefore, to acquire citizenship from his United States citizen father, Respondent must demonstrate by a preponderance of credible evidence that (1) there is a blood relationship between him and his father; (2) his father was a United States citizen at the time of Respondent's birth; (3) he was legitimated by his father before the age of 21 under the law of his or his father's domicile; and (4) his father was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years. The court will therefore examine each element, in part.

---

[1] Former INA § 301(a)(7) was amended in 1986 and is currently codified as INA § 301(g). INA § 301(g), as amended, applies to individuals born after November 14, 1986 and requires a shortened period of United States residence for the citizen parent, from the previous ten/five years to the five/two years.

3

Case 1:18-cv-01584-AJN Document 1-25 Filed 02/08/18 Page 4 of 7
Case 1:17-cv-08666-JMF Document 125 Filed 01/08/18 Page 4 of 7

Decision of the Immigration Judge
A

### i. Blood relationship

INA § 309(a) as amended on November 14, 1986, specifies that the blood relationship of a child born out of wedlock to a United States citizen father must be established by clear and convincing evidence. This standard generally means that the evidence must produce a firm belief in the truth of the facts asserted that is beyond a preponderance but does not reach the certainty required for proof beyond a reasonable doubt. 7 FAM 1133.4-2(b)(1). There are no specific items of evidence that must be presented. *Id.* DNA tests are not required, but may be submitted and can help resolve cases in which other available evidence is insufficient to establish the relationship. *Id.* Former INA § 309(a), as applicable in this matter requires only that the adjudicator "be satisfied that a blood relationship exists between the child the United States citizen father." 7 FAM 1133.4-2(c)(1).

Respondent provided a copy of a birth certificate in support of the present motion. *See* Resp't Motion, Tab N, July 13, 2017. The birth certificate indicates that Ramon Dario[2] was born on December 20, 1964 in Montecristi, Dominican Republic. It lists the father as Ramon Emeterio Acosta Acosta, born in Puerto Rico on March 3, 1937. It also lists the mother, Georgina Pimentel Vasquez, born in the Dominican Republic.

The provision of Respondent's birth certificate, which lists Ramon Emeterio Acosta Acosta as his father, is sufficient to produce a firm belief that a blood relationship exists between Ramon Emeterio Acosta Acosta and Respondent. Under the heightened standard of the current INA § 309(a), Respondent has established by clear and convincing evidence that there is a blood relationship between him and Ramon Emeterio Acosta Acosta. Therefore, it is necessarily the case that Respondent has proven by a preponderance of credible evidence that there is a blood relationship between him and Ramon Emeterio Acosta Acosta.

### ii. Father's citizenship

All persons born or naturalized in the United States are citizens. U.S. Const. amend. XIV, § 1. Citizenship by birth in the United States also applies to persons born in certain territories under United States control. INA § 301-308, 8 U.S.C. §§ 1401-1408. The "United States" includes the Continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the United States Virgin Islands and includes ports, harbors, or territorial waters of the United States. INA § 101(a)(38), 8 U.S.C. § 1101(a)(38).

Respondent provided a death certificate of his father, Ramon Emeterio Acosta Acosta. *See* Resp't Motion, Tab O, July 13, 2017. The death certificate indicates that Ramon Emeterio Acosta Acosta was born in Cabo Rojo, Puerto Rico on March 3, 1937 and that he passed away

---

[2] The court notes that Respondent's birth certificate lists the child's name as "████████" Respondent explains in his motion that he was given the middle name ████ at the time of his birth, and that Respondent's father also used the name ████ (as evidenced by Respondent's Baptism Certificate at Resp't Motion, Tab T, July 13, 2017). The court further notes that Respondent's Immigrant Visa and Alien Registration includes his full name: ████ ████████ (Resp't Motion, Tab L, July 13, 2017). The court is satisfied that the individual named in the birth certificate is in fact, Respondent.

on December 25, 2000 in Mayaguez, Puerto Rico. Respondent has therefore established that his father, Ramon Emeterio Acosta Acosta, by virtue of his birth in Puerto Rico, was a citizen of the United States at the time of Respondent's birth.

### iii. Legitimation

Between December 24, 1952, and November 13, 1986, children born out of wedlock abroad to citizen fathers received citizenship at birth if the father legitimated the child (or the child was legitimated by law) before age 21. INA § 309(a), 8 U.S.C. 1409(a) (1964). Under former INA § 309(a), legitimation can occur under the law of the child's residence or the law of the parent's residence. 7 FAM 1133.4-2(c)(2). In the present matter, the court will look to the law of the Dominican Republic to determine whether legitimation occurred.

The Board of Immigration Appeals ("the Board) has defined legitimation as the act of putting a child born out of wedlock in the same legal position as a child born in wedlock. *See e.g., Matter of Reyes*, 17 I&N Dec. 512, 14 (BIA 1980) *overruled by Matter of Cabrera*, 21 I&N Dec. 589 (BIA 1996). In *Matter of Reyes*, the Board specifically looked to the laws of the Dominican Republic and held that a child acknowledged under the laws of the Dominican Republic does not qualify as a legitimated child because he does not enjoy the same legal status as a child born in wedlock. *Id.* at 515. However, in *Matter of Cabrera*, the Board overruled its prior holding and held that due to the enactment of the Code for the Protection of Children in the Dominican Republic on April 22, 1994, a child born out of wedlock is placed in the same legal position as one born in wedlock once parentage is established according to the legal procedures of the Dominican Republic. *Matter of Cabrera*, 21 I&N Dec. 589 (BIA 1996). *See also* Ley No. 14-19 que crea el Codigo para la Proteccion de Ninos, Ninas y Adoslescents [Law No. 14-94, Code for the Protection of Children and Adolescents] Gaceta Oficial, Apr. 25, 1994 (enacted Apr. 22, 1994) (hereinafter "Code for the Protection of Children"). The Board clarified that the Code for the Protection of Children applies to "all present and future legal situations" and to "legal situations that were established and created before the promulgation of the law and continue in existence after such promulgation." *Matter of Cabrera*, 21 I&N Dec. at 590. Therefore, a child residing or domiciled in the Dominican Republic may qualify as a legitimated child as soon as his father acknowledges paternity in accordance with Dominican law.

In *Matter of Cabrera*, where the petitioner submitted an extract of the beneficiary's birth certificate which indicates that he acknowledged the beneficiary as his son August 28, 1989, the Board held that the petitioner had legitimated his child in accordance with Dominican law. In a footnote, the Board quoted article 21 of the Code for the Protection of Children, which relates to proof of filiation and states that "[s]ons and daughters born out of wedlock may be acknowledged individually by their father either when the birth occurs, or by means of a will, or by a public instrument." *Matter of Cabrera*, 21 I&N Dec. at 591 n.1.

The present matter is factually similar to *Matter of Cabrera* in that Respondent has submitted proof that his father acknowledged Respondent as his son when he registered Respondent's birth with the Dominican Republic Office of Civil Status. *See* Resp't Motion, Tab N, July 13, 2017. His birth certificate indicates that on December 27, 1964, Ramon Emeterio Acosta registered the birth of his son, Ramon Dario, born on December 20, 1964. *Id.* Therefore,

Case 1:18-cv-01584-AJN Document 20 Filed 02/08/18 Page 6 of 7
Case 1:17-cv-08666-AJN Document 15 Filed 11/08/17 Page 6 of 7

Decision of the Immigration Judge
A████████

under the law of the Dominican Republic, Respondent qualified as the legitimated child of Ramon Emeterio Acosta when he was seven days old. As such, Respondent has demonstrated by a preponderance of credible evidence that he was legitimated by his father before the age of 21 under the law of his or his father's domicile.

### iv. Father's physical presence

An applicant acquiring citizenship under former INA § 309(a) must show that his or her father was physically present in the United States for ten years, at least five of which were after the age of fourteen, prior to the birth of the applicant.[3] INA § 301(a)(7), 8 U.S.C. § 1401(a)(7) (1964). Although the INA does not define "physical presence" it is interpreted as actual bodily presence. 7 FAM 1133.3-3(a)(1). Any time spent in the United States or its outlying possessions, even without maintaining a United States residence, may be counted toward the required physical presence. *Id.*

The "preponderance of the evidence" standard requires that the evidence demonstrate that the applicant's claim is "probably true," where the determination of "truth" is made based on the factual circumstances of each individual case. *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010). There is no catch-all definition of the term "preponderance of the evidence." Generally, however, when something is to be established by a preponderance of evidence it is sufficient that the proof only establish that it is probably true. *Matter of E-M-*, 20 I&N Dec. 77 (BIA 1989).

In this matter, Respondent has provided the following evidence in support of his father's physical presence in the United States for ten years preceding 1964: (1) his father's death certificate confirming Ramon Emeterio Acosta Acosta's birth in 1937 in Puerto Rico (*see* Resp't Motion, Tab O – Death Certificate, July 13, 2017); (2) a 1940 Census Extract showing his Ramon Emeterio Acosta Acosta's presence in Puerto Rico at the age of three (*see* Resp't Motion, Tab R – United States Census 1940 excerpt, July 13, 2017); (3) a Social Security Applications and Claims index indicating that Ramon Emeterio Acosta Acosta applied for a Social Security Number in the United States in June 1955 at the age of eighteen (*see* Resp't Motion, Tab S – Social Security Applications and Claims Index, July 17, 2017); and (4) evidence that he served in the United States Army as a Specialist Four for a minimum of two years sometime between 1958, when the rank was created, and 1964, when Respondent was born (*see* Resp't Motion, Tab Q – National Cemetery Administration Nationwide Gravesite Locator; Tab P – Respondent's Affidavit; Tabs V, W – History of the Army Specialist Rank and E-4 Specalist, July 13, 2017).

---

[3] The United States Supreme Court recently held that the different United States physical presence requirements for unwed mothers in INA § 309(c) (continuous period of one year), and unwed fathers in former INA § 301(a)(7), 8 U.S.C. § 1401(a)(7) and current INA § 301(g) (10 or 5 years, respectively) violate the equal protection provisions of the Fifth Amendment. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1701 (2017). Nevertheless, the Court declined to apply INA § 309(c) continuous period of one year physical presence requirement to the child of an unwed United States citizen father, stating instead that "[g]oing forward, Congress may address the issue and settle on a uniform prescription that neither favors nor disadvantages any person on the basis of gender," and that in the interim the longer physical presence requirement should also apply, prospectively, to children born to unwed United States citizen mothers. *Id.* However, *Sessions v. Morales-Santana* does not impact the outcome in this matter because in this case we are focusing on the physical presence of Respondent's father, the requirements of which have remained unchanged.

Usually, it is not necessary to compute United States physical presence down to the minute. 7 FAM 1133.3-4(b). For example, a parent who was in the United States from 1970 to 1988 has met the current transmission requirements even if the exact, months, days, or hours are unknown. *Id.* Given the preponderance of the evidence, Respondent has shown that his father was probably present in the United States from the time of his birth in 1937 to at least 1960, the earliest he would have completed his two years in the United States Army as a Specialist Four.[4] As such, the court finds that Respondent has met his burden of demonstrating that his father was physically present in the United States for ten years, five of which were before he attained fourteen years of age, prior to 1964.

### III. Conclusion

Given the relatively lower standard of proof required and the availability of the evidence in this matter, the court finds that in the interest of justice, Respondent has overcome the presumption of alienage and should have the opportunity to present his N-600 Application for Certificate of Citizenship to the United States Citizenship and Immigration Services ("USCIS"). Consequently, the court will grant Respondent's motion to terminate proceedings.

Accordingly, after careful review of the record, the following Order is entered:

### ORDER

**IT IS HEREBY ORDERED** that Respondent's motion to terminate removal proceedings be **GRANTED**.

10/30/17
Date

_/s/ Tadal_
Mirlande Tadal
Immigration Judge

---

[4] From December 24, 1952 to November 13, 1986, a parent's honorable military service abroad constituted "physical presence." INA § 301(a)(7), 8 U.S.C. § 1401(a)(7) as originally enacted June 27 1952, Pub. L. No. 82-414, 66 Stat. 163 (stating "any period of honorable service in the Armed Forces of the United States by such citizen parent may be included in computing the physical presence requirements of this paragraph").